322-0077, Charles H. Landwer, Appellant, v. Deluxe Towing, Inc., Appalachia. Thank you. Good afternoon. Good afternoon, judges. Good afternoon. Good afternoon. Mr. Landwer, you would go first. Are you ready? I am. You may begin. This matter involves my trailer which was stolen in February, the 27th of 2007. The appellant reported the theft to the Hanover Park Police on March of 2007. I am the lawful, the appellant is the lawful owner of the enclosed trailer with tools, and as of this morning, the title remains in the appellant's name. The appellee has possession of the appellant's trailer and has yet to explain how the appellee came into lawful possession of the trailer. The appellee, Deluxe Towing, is a towing company with an office and storage yard in unincorporated Carroll Stream in DuPage County. There are two ways the appellee could have come into possession of the trailer, through a lawful tow or an unlawful tow. We litigated this in the court, and we never got to the idea of how they came into possession of the trailer, because the court said that I filed my complaint, which I filed in 2016, and they said because my trailer was stolen in 2007, that I ran into a statute of limitations problem. The statute of limitations is a five-year statute of limitations on property. Because I did not know who to sue, the appellant did not file suit. I looked, I checked in with the police, the appellant checked in with the manufacturers of the product. I did as much diligence as I could to determine who had stolen the appellant's trailer. Because I was unable to find who was responsible, the appellant did not file suit. I waited until I learned who to file, who the appellant could sue, and I ended up finding out in 2016 when some of the items that were in my trailer, in the appellant's trailer, were sold. I determined that because the manufacturer of one of the objects had sent a letter to the appellant explaining that there was a problem with a warranty and they wanted to repair it, and there was a recall. And if there wasn't a paperwork mix-up where they had sent it to me, I still to this day wouldn't know where the appellant's trailer was. So I determined where my trailer was. I found it at the deluxe towing through talking with different people who bought some products that was in the appellant's trailer, and I filed suit. And I filed suit in November of 2016, right about six months after I determined where the appellant's trailer was. And the court told me that the statute of limitations had run. And that's why I couldn't file suit. And I understand that the statute says that there's five years, and I understand that there's something in the statute called fraudulent concealment. I believe the appellee engaged in fraudulent concealment. When the appellee tows a vehicle lawfully, they're supposed to notify the owner, publish a legal notice in the newspaper to advertise the sale, when the sale would be, how much, where they towed it, and the statutory requirements for that. They never filed any notice. They never contacted the police because if they did, the police would say, hey, wait, that's on our stolen sheet. We're looking for that trailer. And to this day, I have a lawful Illinois title in the appellant's name, and I was unable to get my trailer back still. And the court dismissed my complaint based on statute of limitations when they fraudulently concealed it. And I used as much diligence as I was able to. I called the police every month. I continued to search. I talked to the manufacturers. I did everything I could to find out who was responsible and whom to sue. Now, you could, of course, file a John Doe complaint, but as a judge knows, how long are you going to let that in your docket when I don't have a real defendant? And you can file a 224. The Supreme Court ruled, they discovered a defendant, but whom do I ask? If I knew, I would sue them. It's not like the appellant had somebody who could sue. So I waited and waited and kept searching, and I eventually learned who had my trailer. And that's when I filed suit in November of 2016, which was six months after I determined who had the appellant's trailer. And I wrote letters asking for the return and got nothing. Case is relatively simple. We have to determine when I had enough information to begin my litigation. What date did I determine who the defendant was and when my cause of action accrued? I could have filed on the day it was stolen, but whom do I serve? Whom do I list as a defendant? And the appellee's position is, well, the cause of action happened the day it was stolen. My position is, the appellant's position is, I filed as soon as I knew who had possession and whom to sue. Mr. Landwehr, how much discovery, if any, did you do after the case was filed? None. We filed some discovery, but it was not answered, and they filed a motion to dismiss the case based on a statute of limitations. So did you ask the judge to complete the discovery prior to ruling on the motion to dismiss? I did, indeed. And the judge denied that? Correct. And this may be collateral to this suit, but I noticed in the papers that you, it appears that you received an insurance settlement for the trailer and some of the proceeds. I know you had Snap-on tools, the hot seat, pressure washer, and some welders. Is that the case, that you received compensation for those? We were, yes, we received minimal compensation. There was a large deductible, and it shook out to where we got, yes, there was some compensation received. Eighty-three some, or eighty-some thousand dollars, is that accurate? It was much less than that, sir, much less. That was the initial claim, but I don't believe that that was the full amount that we received. Yeah, that's about the value. That was the value we claimed was $83,000. That is correct, but we didn't receive that. Okay. And you, you did, in the underlying suit, I believe it was in the motion to dismiss or your response, some research about the publication of notice, and that you went through the papers. I know I saw several, many copies of those in the search you did. Did you, you brought this up in your statements here to us today, but you never received a notice directly to you? Sir, I don't want to lie to you. If the notice was in the newspaper, I don't read today's legal notice. I don't. Maybe you do. I don't know anybody who does. I'm sorry, I should be more clear. Did you receive some direct mail from anyone regarding a notice about your trailer? No, and the notice was never in the paper. They have, the appellee, the appellee provides some, what they call a receipt. Well, the receipt is supposed to, you know, have a tear sheet on it. So, and it's supposed to be, you've seen those as a judge. I've only learned about those most recently. We're supposed to believe that they took the original, copied it through the original way and have the duplicate. I state that the receipt they're showing is a fake. That whether it's true or not is irregardless. How am I, as an innocent person sitting home looking for my trailer supposed to go through people's walk-in? If it's not in the newspaper, which it's not, how would I know? Having a receipt is no good at all. You know, the receipt is meaningless. I wouldn't have to do like they did with those Russian kids where they closed the whole county, went door to door to look for my trailer. But maybe I could go through body shops, file cabinets. I don't know where he hid it, but I had no notice whatsoever. They're supposed to be certified letters. All they had to do was call the police. See, I got the trailer. And today, this morning, I called just so I could say this. The state of Illinois still has the trailer in my name and the Illinois State Police, which interestingly enough, they print the hot sheet on paper. And today, they still make a hard copy. And he says, we printed it this morning and my trailer is still listed on the new one that was printed this morning. If they were to call the police, well, I don't want to defend the state as the greatest in the country, but they would have figured out that it was stolen and we're not giving a title. And that's what the Secretary of State did in summer of 2016. And they notified me that somebody was looking to get a bonded title, which if they legally towed it, they wouldn't need a bonded title. They run the sale and they send the receipt and the documentation and the state sent them a title. Why would they be going through the bonded title process? So, no, I received nothing. There's no certified letter. They have no green card to make a long answer to your short question. Thank you, Mr. Landwehr. Mr. Landwehr, you reported this stolen to the Hanover Park Police in 2007, and you said that it had been stolen February 10th by somebody you knew. Correct. Is that accurate? No, but it was in a locked building. And I thought, see, nobody ever saw the trailer. It was a service trailer. It's a non-descript black trailer with our tools and such in it. And we towed it behind the truck. I wouldn't think somebody would, a towing company would steal it. But what I had found out in my snooping around is one of their drivers had seen it when he towed somebody's car, and that's how it was stolen. So it's your assertion that deluxe towing is who stole it? Absolutely. They have it, and you can't explain how they got it. I mean, I was not there to see it, and I didn't see them steal it, but they have it and have no excuse how they got it. They had said police tow, and in my pleadings with the circuit court, I had written letters, FOIAs. The police never heard of it, and one of the DuPage County police says, yeah, if we found it, we would return it. That's on the stolen sheet. I didn't tell them that. They told me that. So when you reported to the Hanover Park Police that you knew who had stolen it, you were meaning deluxe towing? No, I thought a person who had worked for us stole it. They went out to talk to him, and they determined that he did not have it. I thought that he had stolen it, but that was incorrect. But I did tell that to the police. I thought I gave them an avenue where to begin the investigation. Okay, and February 10th, you said, was when it was stolen, but you reported it to the police on March 12th in 2007. When you reported it, what did you report? That somebody had broken into our building, which we have a tenant living in that building. It's a farm property, a farmette, if you're familiar with that word. And we store our tools and our equipment there that we use to farm and property in DuPage County there, and we don't go there every day. So I was kind of, you know, guessing when we had last seen it, and it was about the February 10th or 12th that it was stolen. That's a real good number based on when people worked for us and when we had last seen the trailer. Okay. But we didn't determine that until March. Okay, thank you. Thank you, ma'am. You may proceed with your argument. So I diligently used the best ability I had to find out who was responsible and who I could sue. And they are required by statute, whether it's a police tow, a non-police tow, a relocation tow. They're supposed to search, get the police, they're supposed to notify the police they have the trailer. They're supposed to publish in the newspaper for the storage charges. They're supposed to run a sale. They run a sale. They fill out a certificate who bought it. They file that with the state of Illinois. And within 90 days from the date of tow, if it was a legitimate tow, the state of Illinois, the Secretary of State, they work quickly in these type of matters, I was told by the Secretary of State, that they would issue a title. So if they happily did everything right, like they're supposed to, which they've done over and over before, they have run legal notices in the newspaper. Not this time. There was nothing in the newspaper. They have filed for titles with the state of Illinois, according to the state of Illinois. They are familiar with the process. They would have had a title within 90 days. By 4th of July, they would have had a title for the trailer. Today, by their own admission, they're using the trailer to haul some motorcycles around, which makes it worse than when I didn't know who stole it. Okay. All right. Have you finished your argument. I believe I have. Okay, thank you. Are there any questions for Mr landlord. Not this time. No. Okay, thank you. Mr Caruso. You may begin. Thank you, Mr landlord, justice, big big justice Peterson. Just to settle. And please the court. Much of what Mr landlord said it's not in the court record. I've represented to Lex towing for 25 years or more. It's a reputable towing company and I disagree with much of the beyond the record recitation came out from Mr landlord. And as far as Mr. Justice handles question I do believe there was some discovery. I honestly didn't focus on that because I didn't think it was an issue but we issued subpoenas to the person from the Daily Herald, and that resulted in us getting an affidavit from the person in charge of those notices that's attached to the motion. To dismiss pursuant to 2619. I do agree with Mr landlord that this is a simple case parties agree on a lot of things we agree that the standard of review is abusive discretion. We agree that the applicable statute of limitations is five years. And the statute begins to run. One, when a party knows or reasonably should know that an injury occurred, and to that it was wrongfully caused. That's it, that was set forth in this Illinois Supreme Court case hermitage versus contractors adjustment company cited in my belly brief. Mr landlord admits that he reported the trailer stolen when he reported it miss missing to the Hanover Park police in 2007, seven. That is when Mr landlord knew of an injury that was wrongfully caused. Therefore the statute of limitations ran in 2012. Mr landlord's lawsuit was actually filed in 2018 11 years after he knew of an injury that was wrongfully caused. There was another lawsuit in 2016 but it's not worth discussing because even that's after the statute of limitation that that case was dismissed and he found another one in 2018. So in order to avoid the effect of the statute of limitations, Mr landlord is trying to argue that the statute of limitations should be extended due to fraudulent concealment, based on his faulty interpretation of the lien statutes and faulty logic. The logic goes like this. The lien statute requires to foreclose on a lien, you need to give notice to the owner. The locks did not follow paperwork required under the lien statutes within the statute of limitation, and therefore deluxe fraudulently conceal the cause of action for Mr landlord. And there's three problems with that analysis. One lien statutes don't create a broad duty to disclose they set forth procedures for foreclosing on liens on channel. And number two, well in fact, deluxe towing did identify itself and the identification of Mr landlord in that notice of publication we were talking about. It was a notice of intent to sell the trailer to enforce the mechanics lien on the trailer. That notice was supported by two affidavits, one from an employee of deluxe towing who's the keeper of the records and said she found this in their records. And the other from the person at the Daily Herald that we got through their attorneys who's in charge of notices at Daily Herald. So, if I can interrupt. You probably are able to answer this question since you've been representing them for 25 years. Is there an obligation under the statute to also check with the Secretary of State find out who owns the vehicle and or trailer in this case, and to send them notice directly to them. I think in some cases, there are I, you know, I, I only represented them and I didn't represent him and leads unfortunately so I don't know all that towing stuff. See, I went to the ICC once and I was a fish out of water and I had to send another attorney and. So, to be very honest. So, those, those affidavits are attached to the record on appeal at CA 94 but it sounds like you've already seen them. But, you know, most importantly, getting back to the faulty logic about fraudulent concealment. The disclosure that Mr land where claims was fraudulently concealed is not the information set forth in the hermitage versus contractors adjustment that starts the running of the statute of limitations. But Mr land where claims was fraudulently concealed was not knowing when the injury occurred, and that it was wrongly caused. Instead, Mr land where claims that the information that was concealed was the identity of deluxe towing. Judge Gibson patiently and eloquently explained to Mr land where when ruling on the to 619 motion that the statute of limitations was written by the legislature in a statute, and it does not require that a person know the identity of the person who caused the injury. So Judge Gibson, I believe correctly stated that he had to deny the motion to dismiss because that's, that's the law he must follow. That's what the legislature put together fraudulent concealment does not apply to this case because the supposed concealed information, the identity of deluxe towing is not relevant to when the statute of limitations convention commences. I also think that's a very interesting point that's the police report mentioned that Mr landlord said he knew who took the trailer and said, the stuff was in Kane County. That wasn't in any of the briefs. Hats off to Justice McVeigh for finding that in very tiny language on this document. He, he knew something in 2007. I don't think it's relevant to the question of the statute of limitations but does, among other things like the notice contradict his argument that he had no notice of the identity of deluxe, although it's our position deluxe didn't steal this, this was a police tow. Police tows are usually started from an arrest or a car accident. And, you know, that's the problem. That's why we have a statute of limitations. This is so far in the past, both sides had trouble getting documents that this is before a lot of places, scan their documents, so you had to hope they kept the papers. This long and we had trouble getting police records in this case. Um, Mr Caruso, I had a couple of other fact questions. It was really hard to understand a lot of about this case. Um, and you said this was a police tow. And I was trying to look at the notice that was sent to the newspaper the publication notice, and it looks like it says that this was a tow that was done in January of 2007. Is that correct. Um, I have it right, but it's really hard to read, because it is fuzzy copy. And what I did was expanded on my screen and from memory I'm not sure what the date was. I thought it was January but that's that's what I'm thinking too and so I'm wondering if you told it in January. Why Mr land we're on didn't think that it was taken until February. Um, and it sounds from what he was saying like you told it from his property. Yeah, in a big truck that says deluxe towing on the side that's really unbelievable. I'm just looking at your notice, I was looking at your know oh you're, that's a question I'm sorry I now I know the. I think the reason the address was on there is because they look, they must have looked it up on the title and gave notice to him they had to. I think Mr landlord is right you have to look up who the owner is to give them notice. They probably should have sent a letter, but it's so long ago we don't have a copy of the letter to that address, but they gave notice saying they had a lien already of $1,900 for storage fees. Okay, and just one other question that I had. If this was going to be sold July 31 2007. Why is it that you still had it in 2016. I really don't know. It's a trailer if it was a car. Maybe they would have gotten. I know a little bit about the procedures for cars, I don't know the procedures for trailers. The best answer I could give is that. Maybe they sold it to themselves, but never followed up with the paperwork, but it. It is still there it is sitting there. Okay. All right. Thank you. Sorry, just make the, it's going to follow up with that. We're just talking about the trailer though not the contents of the trailer. Mr. Yes, it's our position when the trailer was told from me, and I don't remember whether it was an accident or an arrest, it was empty. And I'll have to be honest. I got that from the person who told it. In this case is so old he died of cancer, two years ago, that would be coach Foster who was was a dear friend of mine and started the company. Like 30 years ago. So that's not of the record but it's would be our position that it was empty. We never got a steam cleaning equipment or anything like that. I have no more argument and I thank you for your attention I'm happy to answer any more questions. Are there any further questions for Mr Caruso. I have one more. Screw so the elements of replacement. You know those offhand. I just had a TRO last year. wrongfully withholding property belonging to that of another, something like that. And the discovery rule that you've cited is a is a tort case. And in this particular case, it's for the retrieval of personal property. It was the judges opinion in your opinion, obviously that that accrues. When you know that your property is gone. The question is, if you don't know where it's at. And the cause of action is to retrieve something. Couldn't it be argued that that is an element of a reply which has not accrued. Yeah, I thought about that and I didn't find any law on that. I believe that I don't think there is any. I was just to throw something out I would call it abandoned at that point, but I see it's a question I can't answer either I just wanted to give you the opportunity to do so. I look at it as something that seems unfair, but the law does not let you do it. And that's really hard for a judge or a lawyer to swallow, I'll admit, but we have an unfairness argument to we've spent multiple amounts of value that that lousy trailer is worth on this case, and we couldn't make it go away. If we tried to give it to him, so it because of the passage of time we couldn't prove that maybe everything was done right. You know, so that's unfair to us. Thank you. Any other questions for Mr Caruso. No, I do not. Mr land where you have five minutes for rebuttal. Thank you, Your Honor, if it pleases the court. Whether the receipt looks like the receipt is not a receipt, any affidavit from the Daily Herald is meaningless. If the, if the notice was not in the newspaper, how are you, how are I, how is my neighbor supposed to see that they got my trailer. I'm supposed to break into his office and go through the file cabinet until it's published in the that's the reason for the legal notice in the newspaper is so people can see it. We were litigating for two years, then all of a sudden they found the magic receipt. Come on, if they had it they would have looked at day they got the lawsuit. The receipt is fake. Trust me on that. The lean statute allows him to sell the trailer and if you look into the statute. It's 625 625 54 it's to to 12207204, that's under the vehicle code it talks about how they have to notify the owner notify the law enforcement in the area to make sure that the rightful owner if they can't find the owner. They like if the owner, if they address and the title isn't the owner's name and the law enforcement will help them with that. They have to notify the lean holder they have to find notify the owner, that's sick that's 625 ILCS 542 16205 207 it talks about the notice. And I filed for your request to the Hanover Park police they have no record of any told they have no record of any accident, the Charleston police no record of any tone no record of any accident. These people alleged to have records back to the 50s and 60s. I notified the DuPage County Sheriff they have no record of any toe any accident. They say they have paper police reports back to the 30s, except there was a period of time in the 60s, when they store them at the old jail and there was a flood so they lost some of those, the police have good records they certainly have records back to 2007. The towing company simply stole my trailer. The steam cleaning equipment, which was in the trailer which they allege was empty was sold, sold to Loyola, Loyola University, and that is how I determined who had the trailer the dealer Loyola University bought the steam cleaner from was the same sold my steam cleaner to the dealer, and the dealer so that they'll Loyola, if they wouldn't have had that I never would have found it. Never I'd still be looking for my trailer, and anytime they want to give me the trailer I am willing and able to accept it. I have a title and have current license plates which we pay for every year, just to keep our ownership history. It's simply not true there was no police tow. There was no accident, they have, let's see the police records, please have records, they don't have the records from 100 years ago they certainly got it from 10 years ago. And why isn't if they did this right. And they ran the lien sale, then they should have a title. Now we're rewarding them for being lax and their paperwork to my detriment. If they ran the sale and they have a good cause of action against the Daily Herald. We paid you, you promised you were going to run the legal notice you didn't know what's going to cost us in this lawsuit. They should sue the Daily Herald, the Daily Herald didn't publish the law, the legal notice, and their receipt is not a Daily Herald receipt. The police would have information, they had my equipment, and you can see in my pleadings, and I plot everything we're talking about today in my pleadings the records 1400 pages long it's a big record. But my equipment was in there they sold my equipment, one of their employees who I talked to said they're using my toolbox today that was in the trailer in the towing company. But here we are. Here we are. They certainly cannot be rewarded for stealing, you have a car. So if I steal your car today from you, your honor, and I park it in my garage, how are you going to find it and what happens in 10 years I could drive your car wrong. I think you'd be a little upset. And that's how I am. If it was a legitimate tow, run the sale, and they certainly could have got more than $1,900 for that trailer. They said the tow was on January 28, which happens to be my birth date. The following weekend we went to Wisconsin snowmobiling. We damaged the snowmobile trailer we came back and welded on it the week after that. There is no possible way. They told that on January 28 we had it. The first week in February, we use the welders in that trailer. So, it's not true. The idea is that receipts meaningless. When did they publish in the newspaper. And he said that my lawsuit. Statue of limitations runs. The day it was stolen I disagree. He's talking about the case with a building with a guy know who built his house and build his building in the roof issue. And I think the case was cellular tax. Knox College versus cellular tax, the Supreme Court case of 1981. Yeah, one of the justice and justice hypo said, you know who built your building, you know, they know who their, who their defendant was, maybe they didn't know about the issue in the water, but they knew who to question, I didn't know who to go to. How can we start the statute of limitations when I have no idea who to sue. Nobody. I mean, I can steal anything and just keep it long enough and say oh you can't do not to me. It just statute of limitations that just doesn't seem fair to me who did nothing wrong. And if there's a police report let's see it. The Hanover parks letter was in C 733 of the record. The Carol stream police letter was on C 735 of the record and the sheriff was on C 737 of the record. They never heard of the trailer, never heard of me. Nothing, no toll no accident, nothing to say they lawfully got it. I don't like to call people things I can't support but the receipts fake, and they're lying, and that doesn't make the whole towing company bad. That makes one of their drivers bad. Miss Mr land where I'm sorry your time is up. Um, do you want to say a last point or. I want to thank the judges you ask good questions and I could tell you read the record and read my briefs and I appreciate that that's all I can ask for is a fair shake. That's all and I just, I was minding my business and people stole stuff and I understand that I'd like to run for the legislature one of the laws I would change starting with wouldn't be the concealment law and the statute of limitations I got another list I'd be after but yeah I agree, but I think there's plenty a lot it supports my fraudulent concealment, if they would have done everything if they would have ran the sale. And they would have done everything right and they had the title then I would have no. But then I would have learned because as I checked with the state monthly, I would have learned that oh there was a title issued last month for that, and I would have learned. 1112 years ago. But thank you for your time and thank you for reading the briefs and thank you for entertaining me in my day in court. Thank you, gentlemen. Thank you. Thank you and I'm not going to steal your car justice with data. Appreciate that. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.